# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5775 | **DATE** | 2/9/2004 |
| **CASE TITLE** | Rodriguez vs. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment is granted. Status hearing set for 2/12/04 is stricken. Any other pending dates are stricken. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | FEB 10 2004 | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 04 FEB -9 PM 4:30 | date mailed notice | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HARRY RODRIGUEZ, N-81196,   )
                            )
        Plaintiff,           )
                            )
    v.                       )   No. 01 C 5775
                            )
KENNETH BRILEY, et al.,      )
                            )
        Defendants.          )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Harry Rodriguez sued Defendants — captains and officials at Stateville Correctional Center ("Stateville") — under 42 U.S.C. § 1983 for violating his Constitutional rights to meals and showers. Defendants moved for summary judgment. For the reasons stated herein, Defendants' motion is granted.

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

1

317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## BACKGROUND

Plaintiff Harry Rodriguez is an inmate at Stateville. He is serving a sentence for murder, home invasion, and burglary. (R. 38-1, Def.'s Statement of Facts ¶ 1.) Defendant Briley is the warden of Stateville. Donald Snyder is the director of the Illinois Department of Corrections. Defendant George DeTella is the Assistant Director of the Illinois Department of Corrections. Defendants Hughes and Stigler are captains at Stateville. (R.15-1, First Am. Compl. ¶¶ 4-8.)

Beginning in the summer of 2000, Plaintiff contends that correctional officers at Stateville forced him to miss between 300 and 350 meals and at least 15 showers because of violations of the Storage Box Rule. (R. 40-1, Pl.'s Statement of Additional Facts ¶¶ 5, 11, 12, 16.)[1] The Storage Box Rule required inmates to stow most of their belongings in a box at any time they were outside of their cells. Failure to comply with this rule resulted in confinement of the inmate to his cell. (*Id.* at ¶ 23.) Because Plaintiff was confined to his cell, he could not

---

[1] Defendants object to Plaintiff's deposition testimony regarding missed meals as "uncorroborated and conclusory." Defendants' only evidence that Plaintiff was not prevented from attending meals, however, consists of the testimony of certain Defendants that they do not remember that Plaintiff was prevented from eating. Further, Defendant does not agree that Plaintiff missed showers, and points to shower logs showing that Plaintiff took 75 showers in about 18-1/2 months. This is not sufficient to show that officers did not prevent Plaintiff from eating the meals and taking the showers in question.

2

shower or eat lunch or dinner.

Defendants contend that they had no personal knowledge of Plaintiff missing any meals. (R. 38-1, Def.'s Statement of Facts ¶¶ 14-32.) In response, Plaintiff points to his own deposition testimony, and that of a former cell mate, Marcus Hubbard, detailing the meal and shower deprivation and Plaintiff's complaints to guards. Plaintiff contends that he complained directly to Hughes, Stigler, and DeTella, and sent letters of complaint to Briley. (R. 40-1, Pl.'s Resp. to Def.'s Statement of Facts ¶ 13.) Plaintiff further asserts that Defendants Briley, DeTella, and Snyder deprived him of showers and meals by acting through their agents at Stateville. (*Id.*) In deposition testimony, Defendants deny that they knew about Plaintiff missing meals or showers in connection with violation of prison rules.

## ANALYSIS

Defendants move for summary judgment on two separate grounds. First, Defendants argue that deprivation of food and showers as punishment for violation of the Storage Box Rule is not a violation of the Eighth Amendment proscription of cruel and unusual punishment. Second, Defendants argue that they did not personally deprive Plaintiff of meals or showers, and are therefore not liable under Section 1983.

### I.  Constitutionality of the Storage Box Rule Punishment

To prevail on an Eighth Amendment claim, a plaintiff must show that the prison failed to "provide for his basic human needs" because of deliberate indifference on the part of prison officials. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) (citing *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Dunigan ex rel. Nyman v. Winnebago County*, 165

3

F.3d 587, 590 (7th Cir. 1999). This showing involves a two-part test requiring the plaintiff to show that: (1) the deprivation was objectively serious, and (2) state officials acted with the "requisite culpable state of mind, deliberate indifference . . . ." *Dunigan*, 165 F.3d at 590 (citing *Farmer*, 511 U.S. at 834). A deprivation is objectively serious if it results in a denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

The Seventh Circuit has held that "in some circumstances an inmate's claim that he was denied food may satisfy the first *Farmer* prong. This is not to say that withholding of food is a *per se* objective violation of the Constitution; instead, a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (noting that the inmate had special medical needs and that "no extraordinary or extenuating circumstances appear to exist" that would preclude an Eighth Amendment claim). Withholding showers for a sufficient period of time could also be a Constitutional violation, although Plaintiff would have to miss a significant number of showers in order to fall short of "the minimal civilized measure of life's necessities." *See Farmer*, 511 U.S. at 834.

In this case, Plaintiff has only alleged that he missed 15 showers (including four consecutive showers over a two-week period) because of violations of the Storage Box Rule.[2] It is undisputed that Plaintiff had access to running water and toiletries in his cell. Although Plaintiff complains that bathing in his cell disturbed his asthma condition, this disturbance is not

---

[2] There is some inconsistency within Plaintiff's statements of fact on this issue. Attempting to deny Defendants' statement that prison shower logs show that Plaintiff took 75 showers during the relevant time period, Plaintiff claims to have missed between 75 and 100 showers. (R. 40-1, Pl.'s Resp. to Def.'s Statement of Facts ¶ 35.) In his own statement of facts, however, Plaintiff claims only to have missed 15 showers. (R. 40-1, Pl.'s Statement of Additional Facts ¶ 12.)

4

sufficient to turn a lack of merely 15 showers over the course of several months into an objectively serious deprivation. Further, although he claims to have developed a rash from not showering, Plaintiff has not supported this complaint with any medical evidence.[3] Defendants' motion is therefore granted with respect to Plaintiff's alleged missed showers.

With regard to food, Plaintiff has testified that prison officials prevented him from eating between 300 and 350 meals and that he repeatedly complained directly to Hughes, Stigler, and others about this deprivation. Defendants offer their own testimony, contending that they were not aware of any such deprivations. As a result, the Court is faced with a "swearing contest" between the parties to determine whether Plaintiff was forced to miss meals for violating a prison rule. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants."). Accordingly, summary judgment is not proper on the issues of whether Plaintiff missed 300 - 350 meals and whether Hughes and Stigler knew about the deprivation.

There is some question, however, as to whether this deprivation of food was objectively serious in Plaintiff's case. It is undisputed that Plaintiff had breakfast delivered to his cell every morning.[4] It is also undisputed that Plaintiff ordered food from the prison commissary and that the commissary food was delivered directly to Plaintiff's cell. Nevertheless, the deprivation of

---

[3] Plaintiff's medical evidence consists of a doctor's statement that a person "could develop a skin rash if they are dirty from not showering." (R. 40-1, Pl.'s Statement of Additional Facts ¶ 28.) Plaintiff does not present any medical evidence of his specific rash.

[4] Plaintiff's original complaint included a claim alleging that Captain Hughes's action in removing inmate breakfasts at 8:00 a.m. also violated Plaintiff's rights. Judge Shadur dismissed the claim, noting that "Rodriguez himself has not chosen to finish such meals in his possession for at least 2-1/2 hours." *Rodriguez v. Briley*, No. 01 C 5775, 2002 WL 339190 (N.D. Ill. March 4, 2002).

more than 300 meals over the course of a year — even with breakfasts and commissary items — could have a serious effect on an inmate's health. The Court is reluctant to rule that Plaintiff, who apparently left breakfasts uneaten for the sake of more sleep, can pursue an action based on withheld lunches and dinners. Because of the discussion in Section II below, however, such a ruling is not necessary.

## II. Legitimate Penological Purpose

Even if Plaintiff can show that the deprivation of meals is an infringement of his Constitutional rights, Defendants will prevail if that infringement is reasonably related to a "legitimate penological purpose." *See Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) (recognizing that "courts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is reasonably related to legitimate penological interests") (internal quotes omitted); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (noting that strip searching a male inmate in front of female officers would not violate the Eighth Amendment if the search was "conducted for a legitimate penological purpose"). The remaining question, therefore, is whether or not a deprivation of meals in punishment of Storage Box Rule violations is related to a legitimate penological purpose.

Ruling on Defendants' motion to dismiss, Judge Shadur approved of the reasoning of the Fifth Circuit Court of Appeals in *Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991). In *Cooper*, prison officials denied food to an inmate because he refused to dress for meals in conformity with prison rules. *Id.* The Fifth Circuit vacated the district court's dismissal because the record did not include evidence of the actual regulation at issue. Without such evidence, the appellate court could not determine if the rule (withholding food for inappropriate

6

attire) reasonably related to a legitimate penological interest. *Id.* at 1084. More recently, the Fifth Circuit again addressed the prison meal-deprivation issue in *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998). In that case, the inmate plaintiff alleged a Constitutional violation because he refused to kneel with his hands behind his back when meals were delivered. As a result of his refusal, prison guard withheld meals. The Fifth Circuit affirmed the dismissal of Talib's Eighth Amendment claim, citing guards' safety when feeding inmates as a legitimate penological interest. *Id.* at 215.

The *Talib* court offered a reminder to prison inmates that is particularly appropriate in the case of Plaintiff Rodriguez. "Given the ease with which Talib could have complied with reasonable prison regulations, he in a very real sense carried the keys to the kitchen cupboard." *Id.* at 216 (citing *Uphaus v. Wyman*, 360 U.S. 72, 81, 79 S. Ct. 1040, 1046-47, 3. L. Ed. 2d 1090 (1959) (internal quotes omitted)). In *Talib*, the Fifth Circuit also noted that *Cooper* might have come out differently if the district court had made a finding with regard to "whether the regulation in question was reasonably related to a legitimate penological interest." *Talib*, 138 F.3d at 215 n. 4.

In this case, the Warden's Bulletin clarifying the Storage Box Rule states that "[i]f an inmate fails to store required property in his storage box, he will not be allowed to leave his living area for [any] service, program or activity (except in cases of court-ordered writs, attorney phone calls, medical reasons or Administrative Review Board and Prisoner Review Board proceedings)." (R. 38-1, Def.'s Mot. for Summ. J. Ex. A.) It is undisputed that this rule serves a legitimate purpose at Stateville, notably the interests of security, order, and cleanliness. *See Parker v. DeTella*, No. 98 C 644, 1998 WL 164817 (N.D. Ill. Apr. 6, 1998) (noting that the

Storage Box Rule served certain "fairly obvious" penological purposes). Because prison policy requires inmates to leave their cells for lunch and dinner, however, the Storage Box Rule also effectively withholds meals as punishment for its violation. This effect is also in line with legitimate penological interests. To hold otherwise would require prison officials to offer lunch and dinner room service to the more unkempt inmates at Stateville.

Plaintiff has neither argued that he did not violate the Storage Box Rule nor has he provided any reasons for his alleged violation of the rule. The Storage Box Rule simply requires inmates to put away their belongings before they leave their cells. As such, the Court bids Plaintiff to take heed of the warning issued by the Fifth Circuit in *Talib*. Given the ease of complying with the Storage Box Rule, Rodriguez "carried the keys to the kitchen cupboard . . . . He chose not to unlock it, and it is not for the federal courts to intervene in his personal decision." *Talib*, 138 F.3d at 216. Because Plaintiff's alleged deprivation of food resulted from the operation of a legitimate penological purpose, Defendants' motion for summary judgment is granted.

Because of this ruling, the Court need not consider Defendants' alternative arguments focused on the culpability of each individual Defendant.

## CONCLUSION

Defendants' motion for summary judgment is granted.

Dated: February 9, 2004          ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

9